**UNITED STATES ex rel. Patricia S. MIKES and Patricia S. Mikes individually, Plaintiffs,**

v.

**Marc J. STRAUS, Jeffrey M. Ambinder and Eliot L. Friedman, Defendants.**

**No. 92 Civ 2745 (VLB).**

United States District Court, S.D. New York.

March 15, 1994.

---

Kay K. Gardiner, Asst. U.S. Atty., New York City, for the U.S.

Harold Burke, Duel & Holland, Greenwich, CT, for plaintiffs.

Mary Beth Kilgannon, Meiselman, Farber, Packman & Eberz, P.C., Mt. Kisco, NY, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case is brought by plaintiff Patricia S. Mikes under the federal Qui Tam statute (31 U.S.C. § 3730) against defendants, physicians by whom plaintiff was employed, alleging that diagnostic tests paid for by Medicare were improperly conducted. Plaintiff also asserts that defendants have failed to pay withholding taxes, dismissed her for complaining about the improprieties, and owe her back wages.

The Qui Tam statute permits a party discovering fraud against the United States as defined in 31 U.S.C. § 3729 to bring the matter to the attention of the Attorney General, who may pursue a suit for the benefit of the United States and, alternatively if the Attorney General declines the plaintiff may, as here, proceed.

The statutory text in permitting restrictions on Qui Tam suits (see § 3730(c)) indicates congressional recognition that the device is an extremely powerful weapon against fraud, which should be administered with care to minimize obvious risks of encouraging abuse for adventitious reasons. Compare *United States v. Bryser*, 838

F.Supp. 124 (S.D.N.Y.1993) (discussing mail fraud statute, 18 U.S.C. § 1341).

Plaintiff also seeks relief under New York's "whistle blower" statute (N.Y.Labor Law 740), which permits an employee subjected to adverse personnel action for reporting hazards to public health or safety which violate laws or regulations to seek reinstatement, back pay and similar relief.

The United States Attorney, during investigation of the matter leading to a decision not to proceed, submitted material to the court *in camera* as permitted by 31 U.S.C. § 3730(a)(3) seeking extensions of time during which the decision to proceed or not do so could be considered. The parties have agreed to unseal all such material except a Status Report (Docket # 6, filed December 28, 1992). Opposing positions have been submitted concerning whether or not the Status report should be made available to defendants. Because, as set forth below, examination of the document shows that it contains no confidential information, it is ordered unsealed together with all other sealed material in the court file of this case.

## II

■ The Qui Tam statute evinces no specific intent to permit or deny disclosure of *in camera* material as a case proceeds. For contrast, see *Baldridge v. Shapiro*, 455 U.S. 345, 360–62, 102 S.Ct. 1103, 1112–13, 71 L.Ed.2d 199 (1982) (Census Act). In permitting *in camera* submissions, the statute necessarily invests the court with authority to preserve secrecy of such items or make them available to the parties. Such decisions may be characterized as discovery matters either directly under, or closely analogous to those considered under, Fed.R.Civ.P. 26(c), which authorizes protective orders for protection of trade secrets and similar information. Resolution of disputes under Rule 26(c) is based on a pragmatic balancing of the need for and harm risked by, disclosures sought.

1. While the Qui Tam statute establishes no privilege, governmental interests in preserving detailed information about ongoing investigations and specific methods of investigation are entitled to substantial weight. Were such interests at stake in a specific instance, the court may infer existence of a privilege under Fed.R.Evid. 501.

Where disclosure of confidential investigative techniques, of information which could jeopardize an ongoing investigation, or of matters which could injure non-parties is requested, courts have recognized the interest of the public in denying or deferring disclosure. See *Friedman v. Bache*, 738 F.2d 1336, 1341 (D.C.Cir.1984); *Black v. Sheraton Corp.*, 564 F.2d 531, 542 (D.C.Cir.1977); *Ass'n for Women in Science v. Califano*, 566 F.2d 339, 343 (D.C.Cir.1977).

■ No privilege is necessary for protection to be granted under Rule 26(c) if appropriate under the circumstances. See *Gottlieb v. County of Orange*, 151 F.R.D. 258 (S.D.N.Y.1993).[1]

## III

■ *In camera* examination shows that the Status Report describes routine investigative procedures which anyone with rudimentary knowledge of investigative processes would assume would be utilized in the regular course of business. It contains no information about specific techniques such as what items might be looked for in an audit, what types of employees of an entity should be contacted and how, what laboratory tests might be utilized, or the like. By contrast, references concerning routine sources of information actually considered may be of some, albeit doubtless limited, use to the defense. There is no ground for retaining the Status Report under seal. See *United States v. Zanfordino*, 833 F.Supp. 429, 432–33 (S.D.N.Y.1993).

## IV

Courts are required to examine their jurisdiction on their own motion if necessary, and under Fed.R.Civ.P. 1 should also ask the parties to address other potentially dispositive threshold issues presented in a case. Two such issues are raised by plaintiff's com-

See *Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 911, 63 L.Ed.2d 186 (1980). This would trigger a balancing test similar to that applicable under Fed.R.Civ.P. 26(c). *United States v. O'Neill*, 619 F.2d 222, 227 (3d Cir. 1980).

plaint: one pertains to plaintiff's New York Labor Law "whistle blower" claim in light of the exclusivity of remedy clause contained in Labor Law 740(7); the other concerns inclusion of income tax-related claims in plaintiff's complaint in light of the limitation of Qui Tam suits under 31 U.S.C. § 3730 to claims for violation of 31 U.S.C. § 3729.

Plaintiff is directed to submit a memorandum of law within 30 days of the date of this memorandum order setting forth any applicable reasons why both of these claims should not be dismissed.

### V

█ Subsection 7 of New York Labor Law 740 provides that:

> ... institution of an action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, law, rule or regulation or under the common law.

Plaintiff's claims under 31 U.S.C. § 3730 seek remedies for the events growing out of same underlying impropriety—asserted improper medical testing—as the whistle blower claim. Subsection 7 makes it clear that the New York Legislature did not intend New York Labor Law 740 to function as an adjunct to other litigation emerging from the same transaction or occurrence.[2] Under Labor Law 740(7), pursuit of both the Qui Tam and whistle blower claims creates an inconsistency which bars plaintiff from proceeding with both. Where competing state claims are at stake, subsection 7 decrees that mere invocation of Labor Law 740 alone is enough to vitiate any other claims irrevocably. See *McGrane v. Reader's Digest*, 1993 WL 525127, 1993 US Dist LEXIS 17790 (Dkt. No. 92 Civ. 8231, S.D.N.Y. Dec. 13, 1993) and authorities cited. The Legislature's choice is not necessarily irrational: it could regard compulsory reinstatement under the "whistle blower" provision as unnecessarily harmful to ongoing business activity if other related litigation between a potentially reinstated employee and the employer is contemplated.

█ Where, as here, an independent federal claim is invoked, the Supremacy Clause militates against forfeiture of the federal claim because of a procedural error under state law, especially one limited to aspects of a pendent state claim of which jurisdiction exists only under 28 U.S.C. § 1367. See generally *Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); *Thomas v. Yonkers Police Department*, 147 F.R.D. 77 (S.D.N.Y.1993). It would thus appear that the inconsistency could be resolved by dismissal of either the state law whistle blower claim *or* the Qui Tam claims.[3]

### VI

The Qui Tam statute is not a blanket provision authorizing citizen suits for the benefit of the United States, even where rejected by the Executive Branch acting under Article II of the Constitution, wherever it might lead to a financial gain for the Treasury. Instead, 31 U.S.C. § 3730 authorizes such suits only for conduct prohibited by 31 U.S.C. § 3729, the False Claims Act, which is limited to specific types of fraudulent activity, principally by government contractors in their role as such.

█ Nonpayment of tax liabilities is covered in great detail in Title 26 of the United States Code, but is not mentioned in the False Claims Act (31 U.S.C. § 3729). This suggests that Congress created a separate remedial scheme to deal with tax matters, which did not embrace their treatment by lawsuits such as plaintiff's current complaint. Whatever incentives may be available for reporting others' tax infractions to the authorities does not appear to be found in the Qui Tam statute.

### VII

Because of the uncertainty as to whether this litigation or an alternate state court whistle blower claim will be pursued, and if the former, what portions of the complaint will survive, all discovery other than unseal-

---

2. Compare Fed.R.Civ.P. 13(a) (compulsory counterclaims).

3. In the latter event, this case might be subject to dismissal in its entirety.

ing of currently sealed documents is stayed pending further order of the court.

SO ORDERED.